UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JEFFREY F.,[1]

    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

6:20-CV-06850-LJV
DECISION & ORDER

---

On October 17, 2020, the plaintiff, Jeffrey F. ("Jeffrey"), brought this action under the Social Security Act ("the Act"). He seeks review of the determination by the Commissioner of Social Security ("Commissioner") that he was not disabled.[2] Docket Item 1. On September 13, 2021, Jeffrey moved for judgment on the pleadings, Docket Item 12; on February 8, 2022, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 13; and on March 14, 2022, Jeffrey replied, Docket Item 14.

---

[1] To protect the privacy interests of Social Security litigants while maintaining public access to judicial records, this Court will identify any non-government party in cases filed under 42 U.S.C. § 405(g) only by first name and last initial. Standing Order, Identification of Non-government Parties in Social Security Opinions (W.D.N.Y. Nov. 18, 2020).

[2] Jeffrey applied for Disability Insurance Benefits ("DIB"). One category of persons eligible for DIB includes any adult with a disability who, based on his quarters of qualifying work, meets the Act's insured-status requirements. 42 U.S.C. § 423(c); see Arnone v. Bowen, 882 F.2d 34, 37-38 (2d Cir. 1989).

For the reasons that follow, this Court grants Jeffrey's motion in part and denies the Commissioner's cross-motion.[3]

## STANDARD OF REVIEW

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id*. This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (alterations omitted) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." *Johnson*, 817 F.2d at 986.

---

[3] This Court assumes familiarity with the underlying facts, the procedural history, and the decision of the Administrative Law Judge ("ALJ") and refers only to the facts necessary to explain its decision.

## DISCUSSION

### I. ALLEGATIONS

Jeffrey argues that the ALJ erred in two ways. Docket Item 12-1. First, he argues that the ALJ's step-two determination is not supported by substantial evidence because the ALJ failed to properly evaluate evidence related to his migraine disorder and multiple traumatic brain injuries ("TBIs"). *Id.* at 15-22. Second, he argues that the ALJ's residual function capacity ("RFC")[4] determination is not supported by substantial evidence because the ALJ failed to appropriately consider the medical evidence in the record and to adequately explain his RFC finding. *Id.* at 22-29. This Court agrees that the ALJ erred and, because that error was to Jeffrey's prejudice, remands the matter to the Commissioner.

### II. ANALYSIS

#### A. The ALJ's Step-Two Determination

Jeffrey first argues that the ALJ erred at step two when he found Jeffrey's migraine or cervicogenic headaches and TBIs to be non-severe impairments. Docket Item 12-1 at 15. Jeffrey claims that the ALJ applied the incorrect legal and medical standards in considering his migraine or cervicogenic headaches and that the ALJ wholly failed to discuss his multiple TBIs. *Id.* at 16-22.

---

[4] A claimant's RFC "is the most [he] can do despite [his] limitations," 20 C.F.R. § 404.1545, "in an ordinary work setting on a regular and continuing basis," *see Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 86-8, 1986 WL 68636, at *8 (Jan. 1, 1986)). "A regular and continuing basis means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Id.*

Disability under the Act is determined under a five-step test.  20 C.F.R. § 404.1520(c).  At the second step, the ALJ determines whether the claimant has any severe impairment—that is, a medically determinable impairment or a combination of impairments that significantly limits the claimant's ability to perform basic work activities.  *Id.*

At step two of the disability determination here, the ALJ found Jeffrey's migraine or cervicogenic headaches to be non-severe.  Docket Item 11-2 at 19. In support of that conclusion, the ALJ noted that there was "no evidence of cervical diagnostic imaging or imaging of the brain."  *Id.*  But according to Jeffrey, the medical standard for diagnosing migraine or cervicogenic headaches does not include any sort of imaging evidence; for that reason, Jeffrey says, the ALJ improperly substituted his opinion for that of James Inzerillo, M.D., an examining physician who found that Jeffrey's headaches appeared to have a "strong cervicogenic component."[5]  Docket Item 12-1 at 18 (citing Docket Item 11-7 at 26); *see also Cecil v. Reliance Standard Life Ins. Co.*, 2005 WL 2291225, at *8 (W.D. Va. Sept. 19, 2005) (conclusion that claimant "does not suffer debilitating migraines stems from the incorrect assumption that a normal brain diagnostic is proof that she does not suffer from migraines.").

Jeffrey may well be correct; but even if he is, any error was harmless.  When an ALJ errs in concluding that a claimant's impairment is not severe, that error is harmless if the ALJ continues the sequential evaluation process and considers all the claimant's

---

[5] Cervicogenic headaches are rooted in the cervical spine or in the base of the skull, while migraine headaches are rooted in the brain.  Stacy Sampson, D.O., *Cervicogenic Headache*, https://www.healthline.com/health/headache/cervicogenic-headache (Mar. 7, 2019).  It can be difficult to differentiate between these types of headaches, however, because the symptomology of the two often overlap.  *Id.*

impairments—both severe and non-severe—during subsequent steps. *Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013). Here, the ALJ explicitly discussed Jeffrey's migraines and TBIs in determining his RFC as part of step four. *See* Docket Item 11-2 at 24 ("[Jeffrey] has migraine headaches once or twice per week."); *id.* at 26 ("[Jeffrey's] treatment providers generally noted that his symptoms from the TBI appeared to be mild . . . .") (citing Docket Item 11-7 at 178-97). Therefore, Jeffrey's argument for remand based on the finding at step two falls short.

### B. The ALJ's RFC Determination

As part of step four, the ALJ determines the claimant's RFC—that is, the most he or she can do despite any limitations. 20 C.F.R. § 404.1520(e). Here, the ALJ found that Jeffrey could perform sedentary work except that he was limited to "simple, routine, and repetitive work with a SVP of 1 or 2."[6] Docket Item 11-2 at 23. Jeffrey argues that this finding is unsupported by substantial evidence for several reasons; each is addressed in turn.

#### 1. Combined impact of severe and non-severe impairments

First, Jeffrey claims that the ALJ failed to consider the combined impact of his severe and non-severe impairments, particularly his migraines and TBIs. Docket Item 12-1 at 15-16. But as just noted, the ALJ addressed Jeffrey's migraines and TBIs at

---

[6] "SVP" stands for "specific vocational preparation," which is "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." *Dictionary of Occupational Titles* (4th Ed., Rev. 1991), 1991 WL 688702 (Jan. 1, 2016). An SVP of 1 is defined as "[s]hort demonstration only," while an SVP of 2 includes "[a]nything beyond short demonstration up to and including 1 month." *Id.*

step four.  Docket Item 11-2 at 24, 26.  Indeed, the ALJ explicitly stated that he considered all of Jeffrey's severe and non-severe impairments when assessing Jeffrey's RFC.  *Id.* at 19.  And no physician opined that Jeffrey's migraines or TBIs required any specific RFC limitations that were not included in the RFC.  So the ALJ did not fail to consider the combined impact of Jeffrey's severe and non-severe impairments in determining his RFC.

## 2.  Reaching, walking, lifting, and carrying limitations

Jeffrey also argues that the ALJ erred in reaching his physical RFC determination.  Docket Item 12-1 at 22-24.  More specifically, Jeffrey asserts that the ALJ's conclusion that Jeffrey could engage in sedentary work is inconsistent with the persuasive opinion of Sergey Zavilyansky, M.D.  *Id.* at 23.

The Code of Federal Regulations defines "sedentary" work as work that "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools."  20 C.F.R. § 404.1567(a).  Sedentary work also involves "a certain amount of walking and standing [that] is often necessary in carrying out job duties."  *Id.*  And while "reaching" is not addressed explicitly in the definition, "[r]eaching is 'required in almost all jobs,' and a reaching limitation 'may eliminate a large number of occupations a person could otherwise do.'"  *Selian v. Astrue*, 708 F.3d 409, 422 (2d Cir. 2013) (quoting SSR 85-15, 1985 WL 56857, at *7 (Jan. 1, 1985)).  As it applies to sedentary work, reaching is considered a "nonexertional" limitation or restriction.  *See* SSR 96-9P, 1996 WL 374185, at *5 (July 2, 1996) ("[A] nonexertional limitation is an *impairment-caused* limitation affecting such capacities such as . . . reaching . . . .") (emphasis in original).

In this case, Dr. Zavilyansky opined that Jeffrey had a "marked limitation for . . . lifting . . . and carrying" and a "mild to moderate limitation for walking and reaching." Docket Item 11-7 at 139.  The ALJ found this opinion to be "somewhat persuasive" and consistent with other examination findings on record.  Docket Item 11-2 at 30.  But the RFC—which included sedentary work without any limitations for lifting, carrying, walking, or reaching—may be inconsistent with that opinion.  Because the ALJ did not include those limitations in the RFC or explain why the RFC did not include them, this Court has no way of knowing whether the ALJ rejected those limitations, simply missed them, or omitted them for some other reason.  For that reason, this Court has no way of evaluating the RFC in light of the "somewhat persuasive" opinion of Dr. Zavilyansky, and remand is required.  See Felix S. v. Comm'r of Soc. Sec., -- F. Supp. 3d --, 2022 WL 4486319, at *4 (W.D.N.Y. 2022) ("The ALJ's failure to adequately explain why he failed to include any limitations to account for Plaintiff's mild-to-moderate mental limitations is error."); see also Jatava L. v. Comm'r of Soc. Sec., 2021 WL 4452265, at *5 (W.D.N.Y. Sept. 28, 2021) ("[D]espite giving significant weight to Dr. Dolan's finding that plaintiff had mild mental health limitations in two areas of functioning, the ALJ did not include any mental limitations in the RFC nor did he explain the absence of such limitations.").

Moreover, if a claimant has a non-exertional impairment that creates "any more than a 'negligible' impact on a claimant's ability to perform the full range of work," the ALJ cannot rely solely on the Medical-Vocational Guidelines and must seek the testimony of a vocational expert in deciding whether the impairment precludes employment.  Selian, 708 F.3d at 421 (citing Zabala v. Astrue, 595 F.3d 402, 411 (2d

7

Cir. 2010); *Saiz v. Barnhart*, 392 F.3d 397, 400 (10th Cir. 2004) (per curiam)); *see* 20 C.F.R. § 404.1569a(c)(2).  A non-exertional impairment is more than negligible "when it . . . so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity."  *Selian*, 708 F.3d at 421 (quoting *Zabala*, 595 F.3d at 411) (internal quotation marks omitted).

      Here, as just noted, Dr. Zavilyansky opined that Jeffrey had a "mild to moderate limitation for . . . reaching," a non-exertional impairment.  Docket Item 11-7 at 139.  But despite finding Dr. Zavilyansky's opinion somewhat persuasive, the ALJ did not discuss this limitation at all, let alone address whether it was "negligible."  Nor did the ALJ contact Dr. Zavilyansky for guidance on that issue.  Under those circumstances, by relying solely on the Medical-Vocational Guidelines—and not the testimony of the vocational expert—in determining whether there were jobs in the national economy that Jeffrey could perform, the ALJ erred.[7]  And for that reason, remand is required so that the ALJ can evaluate whether Jeffrey has a reaching limitation that is more than negligible, and, if so, to rely on the guidance of a vocational expert in determining whether he is nevertheless employable.  *See generally Selian*, 708 F.3d at 422 (quoting *Saiz*, 392 F.3d at 400) ("[W]hether a reaching limitation affects a specific claimant's ability to find work 'is not a [mere] technical or formalistic point.'").

---

[7] The ALJ relied on the testimony of a vocational expert in determining that Jeffrey could not perform past relevant work.  Docket Item 11-2 at 31.  But he relied solely on the Medical-Vocational Guidelines to determine that "there are jobs that exist in significant numbers in the national economy that [Jeffrey] can perform."  *Id.* at 32.

### C. Missing Records

Jeffrey's final argument is that the ALJ failed in his duty to develop the record when he identified "a rating from the Veteran's Administration ["VA"] of 90% disability"[8] but failed to obtain missing records that supported that rating. *See* Docket Item 12-1 at 27 (quoting Docket Item 11-2 at 31) (citing Docket Item 11-6 at 65). More specifically, Jeffrey notes that the "existing record contains multiple references to additional evidence that is obviously missing[,] . . . [and that t]he record referenced by the ALJ only consists of the first page of the notice dated July 14, 2019 . . . ." Docket Item 12-1 at 28 (citing Docket Item 11-6 at 65).

"Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996) (citing *Echervarria v. Sec. of Health & Human Servs.*, 686 F.2d 751, 755 (2d Cir. 1982)). In fact, the Social Security Administration's own regulations say exactly that. *See* 20 C.F.R. § 404.1512(d)(1) ("Before we make a

---

[8] Jeffrey also argues that the ALJ failed to find that Jeffrey "was entitled to 100% disability based upon the VA's finding that [Jeffrey] was Individual Unemployability [sic]." Docket Item 12-1 at 27. This Court has no idea what that means. But if Jeffrey is suggesting that the ALJ was required to find him disabled because the VA did, he is incorrect. Because disability is a finding reserved for the Commissioner, an opinion that a claimant is disabled is not even considered a medical opinion in the social security context. *See Schillo v. Kijakazi*, 31 F.4th 64, 69 (2d Cir. 2022); *Nora A. v. Comm'r of Soc. Sec.*, 551 F. Supp. 3d 85, 93 (W.D.N.Y. 2021) (citing *Taylor v. Barnhart*, 83 F. App'x 347, 349 (2d Cir. 2003)). So an ALJ must consider the reason why a medical provider found a claimant to be disabled but need not accept the finding of disability. Indeed, Jeffrey cites a case saying exactly that with respect to a VA opinion. *See* Docket Item 12-1 at 27 (quoting *Kalota v. Berryhill*, 2018 WL 4907379, at *3 (W.D.N.Y. 2018)) ("The VA's decision that plaintiff was entitled to individual employability benefits 'is not binding on the Social Security Administration,' but is entitled to some weight and should be considered.'") (internal quotation omitted). And the ALJ indeed addressed and considered the VA opinion in his decision. Docket Item 11-2 at 31.

determination that you are not disabled, we will develop your complete medical history . . . [and] will make every reasonable effort[9] to help you get medical reports from your own medical sources when you give us permission to request the reports."); *see also* 42 U.S.C. § 423(d)(5)(B) (The Commissioner "shall make every reasonable effort to obtain from the individual's treating physician (or other treating health care provider) all medical evidence, including diagnostic tests, necessary in order to properly make such determination . . . .").

According to Jeffrey, the evidentiary record is missing documents in connection with a determination made by the VA around October 24, 2018, *see* Docket Item 12-1 at 28, the date on which the VA found Jeffrey to be "totally and permanently disabled due to [his] service-connected disabilities." Docket Item 12-1 at 28 (quoting Docket Item 11-6 at 65). Jeffrey says that "[t]he notice is clearly cut off and does not contain all pages." Docket Item 12-1 at 28. And he says that other records are missing as well, including the record of an examination performed by Edwin Huh, Psy.D., to which another provider refers but which is not included in the record. *See id.* (citing Docket Item 11-7 at 2-77, 198-262).

The ALJ described the opinion of the VA as "conclusory," Docket Item 11-2 at 31, suggesting that the evidence on which the opinion was based may well be missing. But this Court cannot tell from the record whether that in fact is the case. Because the

---

[9] The regulations explain that "every reasonable effort" means that the Administration "will make an initial request for evidence from your medical source or entity that maintains your medical source's evidence," and "at any time between 10 and 20 calendar days after the initial request, if the evidence has not been received, we will make one follow-up request to obtain the medical evidence necessary to make a determination." 20 C.F.R. § 404.1252(d)(1)(i).

Court remands for other reasons, it simply reminds the ALJ of his obligation to inquire about any missing medical evidence and to contact medical providers for additional information when there is a gap in the record.

## **CONCLUSION**

The Commissioner's motion for judgment on the pleadings, Docket Item 13, is DENIED, and Jeffrey's motion for judgment on the pleadings, Docket Item 12, is GRANTED in part and DENIED in part. The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated:   November 3, 2022
         Buffalo, New York

                                         */s/ Lawrence J. Vilardo*
                                         LAWRENCE J. VILARDO
                                         UNITED STATES DISTRICT JUDGE